UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT SPELLMAN, JR.,

    Petitioner,

v.                                              Case No. 3:22cv1823-MCR-HTC

RICKY DIXON,

    Respondent.
_____/

REPORT AND RECOMMENDATION

Petitioner, Robert Spellman, Jr., proceeding *pro se* and *in forma pauperis*, filed a petition under 28 U.S.C. § 2254, challenging his conviction for burglary of an unoccupied structure and grand theft based on four grounds of ineffective assistance of counsel. ECF Doc. 1. After considering the petition, the record, the state's response, Doc. 9, and Petitioner's Reply[1], ECF Doc. 16, the undersigned recommends the petition be DENIED without an evidentiary hearing.

I.    BACKGROUND

    A.    **The Offense and Conviction**

On December 29, 2017, the manager of a Circle K noticed a large number of Newport cigarette cartons missing from where he had stored them the day before in

---

[1] Petitioner addresses only the response to Ground One in his Reply.

his locked office. ECF Doc. 10-2 at 117-19. He reviewed the surveillance footage from a camera that was aimed at the office and noticed "a tall individual, African American, [who] had on a ball cap, some very distinct glasses, and a large, kind of, a letterman or bomber style sports coat. It was a light-colored coat and had sport team logos all down the sleeves and on the front and the back of the coat." *Id.* at 121. The individual was taking the cartons of cigarettes and putting them in his coat. The individual did not pay for the cigarettes and left the store. *Id.* Police were called and came to the scene and left without naming any suspects. *Id.* Three or four hours later, however, the employee saw the same individual wearing the same clothes and accessories outside the store and called the police. *Id.* at 122.

Police arrested Petitioner in a nearby liquor store, still wearing the same accessories and clothing as he was in the video. *Id.* at 141-42. The manager positively identified him as the same person as in the video. *Id.* at 142. Petitioner was carrying a bookbag that contained six cartons of Newport cigarettes, which contained a special Sharpie mark that the manager testified he used to keep track of which cartons he had already counted. *Id.* at 117 & 123. A video of Petitioner speaking to police after he was arrested was played for the jury, in which he denied going into the Circle K. *Id.* at 150.

On the morning of trial, the prosecutor informed the court that Petitioner was offered a plea deal of 48 months and faced a maximum of 10 years. The Court placed the Petitioner under oath and asked him if he intended to go to trial or plea,

and Petitioner insisted on going to trial. *Id.* at 3-5. A trial was held on August 15, 2018, *id.* at 81, after which Petitioner was found guilty of burglary of an unoccupied structure and grand theft involving $300 or more but less than $5,000. *Id.* at 221-22 & ECF Doc. 10-3 at 52. He was sentenced to 10 years for the burglary count and 10 years on the grand theft count, to be served consecutive to the burglary count. ECF Doc. 10-3 at 132-33.

Petitioner timely appealed his conviction, 1D18-4454, and the First District Court of Appeal ("First DCA") *per curiam* affirmed without written opinion on January 30, 2020. *Spellman v. State*, 289 So. 3d 465 (Fla. Dist. Ct. App. 2020). On June 15, 2020, Petitioner filed a post-conviction Fla. R. 3.850 motion. The court granted relief on Petitioner's claim that the sentences should run concurrently and denied relief as to other grounds. ECF Doc. 10-17. The First DCA affirmed. ECF Doc. 10-24. Petitioner filed the instant federal petition on February 9, 2022, and the Respondent does not contest that it is timely. *See* 28 U.S.C. § 2244(d)(1).

## II.   LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long

as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## III. DISCUSSION

As stated above, Petitioner raises four (4) IATC claims in the petition. To succeed on an IATC claim, Petitioner must show that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner

was prejudiced by counsel's performance are not enough.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

For the reasons set forth below, the undersigned finds Petitioner has failed to meet the *Strickland* standard on any claim.

### A.   Ground One: IATC for Failing to Object to Consecutive Sentences

In Ground One, Petitioner claims trial counsel was ineffective for failing to object to consecutive sentences being imposed for Burglary of an Unoccupied Structure and Grand Theft because the two charges occurred during one criminal episode.  ECF Doc. 1 at 5 and ECF Doc. 16 at 9-10.  Petitioner raised this claim in his 3.850 motion, and the state court granted relief and amended the judgment on November 13, 2020.  ECF Doc. 10-18.  Because Petitioner has already received the precise relief he sought, concurrent sentences, he is not entitled to habeas relief.

### B.   Ground Two: IATC for Failing to Inform Petitioner He Was Subject to Habitual Felony Offender Designation Before Allowing Him to Reject a Plea

In Ground Two, Petitioner argues that during plea considerations, counsel never advised him that, if the plea were not accepted, the State would seek habitual felony offender enhancement and Petitioner could face 10 years maximum on each count, rather than 5 years.  ECF Doc. 1 at 7.  Petitioner claims had he known this, he would have accepted the plea deal.  *Id.*

Petitioner raised this claim in his postconviction motion, ECF Doc. 10-14 at 9, and on appeal, ECF Doc. 10-21 at 32.[2] The 3.850 court applied *Strickland* and found that Petitioner could not show prejudice because the claim that Petitioner was unaware he faced a potential 10 years in prison is "conclusively refuted by the record." ECF Doc. 10-17 at 7. This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

The standard set forth in *Strickland* applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). This obligation includes informing a client about formal plea offers presented by the government and correctly advising a client about such offers. Failure to do so is ineffective assistance of counsel. *See Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

---

[2] Because the First District issued a *per curiam* affirmance of the denial of Petitioner's amended 3.850 Motion, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, that last decision comes from the Order Granting in Part and Denying in Part the Amended Motion for Post-Conviction Relief, ECF Doc. 10-17.

Case No. 3:22cv1823-MCR-HTC

In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley*, 751 F.3d at 1222 (quoting *Lafler*, 566 U.S. at 164). However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.

The state court was correct – the record shows Petitioner was aware of the 10-year maximum he faced before turning down the guilty plea. Prior to the start of trial, the court asked the State if it had announced an offer and the prosecutor confirmed the State was offering 48 months. The prosecutor further stated that the maximum term was 10 years for grand theft and for burglary. The court then swore in the Petitioner and asked if Petitioner heard what the prosecutor said. Petitioner confirmed he had. The court then explained to Petitioner that he had the right to go to trial, if he's found not guilty, the court will wish him well, but if he's found guilty, the court can sentence him up to 10 years even though the State is offering a plea of 48 months. Petitioner confirmed he understood. ECF Doc. 10-2 at 3-5.

Regardless of whether Petitioner understood the prosecutor and the court's statements to mean that Petitioner faced 10 years for each count, as opposed to both counts, Petitioner cannot show he was prejudiced. First, it is simply an unreasonable leap to believe Petitioner would have accepted the 48-month plea deal if he had known he faced 10 years on each count but turned it down when he thought it was 10 years as to both.[3] Second, although the circuit court initially erred in sentencing Petitioner to 20 years, the judgment was amended to run the sentences concurrently; thus, Petitioner was sentenced to 10 years for both offenses – the very penalty he confirmed for the court he knew he faced when he turned down the plea deal. Thus, Petitioner was not prejudiced by counsel's failure to tell him he was subject to the habitual felony offender enhancement and is not entitled to habeas relief on this claim.

> **C. Ground Three: IATC for failing to properly investigate, call exculpatory witnesses at trial, or adequately prepare a defense to the charged offenses.**

In Ground Three, Petitioner argues counsel should have called two Pensacola police officers to testify at trial regarding fingerprint investigation conducted in this case. He claims they would have testified that "nothing of value was recovered from the fingerprints" taken at the scene. ECF Doc. 10-14 at 18. He also requested

---

[3] In his Reply, Petitioner states he thought he was looking at 5 years for *each* count. ECF Doc. 16 at 5; *see also, id.* at 8 ("Petitioner was advised that each count carried 5 years. 2 counts equals 10 years".).

Case No. 3:22cv1823-MCR-HTC

counsel call two cashiers as witnesses who worked that night at the Circle K.  He claims that he was friendly with one of the cashiers and she would have testified that "her station in the store was in direct view of the door to the stockroom" and that "she observed and spoke with Defendant that night when he entered the store, and that at no time did she observe Defendant enter the stockroom."  *Id.* at 20.  He also claims the cashiers would have testified about their inventories at the beginning and end of their shifts.  *Id.*  Petitioner claims counsel never interviewed, deposed, or called any witnesses or investigated claims that would have exonerated him.

Petitioner raised this claim in his postconviction motion, ECF Doc. 10-14 at 15, and on appeal, ECF Doc. 10-21 at 43.  The circuit court applied *Strickland* and denied relief because counsel's decision was a strategic one, which the court will not second guess.  The court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).  "*Strickland* mandated one layer of deference to the decisions of trial counsel. . . .  When § 2254(d) was amended by AEDPA in 1996, that added another layer."  *Nance*, 922 F.3d at 1303.  Given the deference due, it is a "rare case in which an ineffective assistance of counsel claim

that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y*, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, "it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel." *Nance*, 922 F.3d at 1303.

This is not one of those rare cases. Counsel was not deficient in declining to further pursue the fingerprint evidence. First, an officer testified about the lack of fingerprints and admitted "there was nothing of value recovered from the latent prints that were lifted." ECF Doc. 10-2 at 156. Thus, the testimony of the other two officers would be merely cumulative.

Counsel was also reasonable in declining to offer the cashiers' testimony about their inventories before and after their shift and that they spoke with Petitioner in the store but he did not go into the storeroom. First, as to the inventory, the manager testified that the cartons which were stolen were kept in his office above his desk, not out front. Thus, it would not have mattered that the cashiers did not identify any missing inventory. Also, the fact that one cashier might have testified she did not see Petitioner enter the storeroom is irrelevant, particularly since video surveillance clearly showed Petitioner stealing the cigarette cartons from the manager's office. Additionally, the testimony would have contradicted Petitioner's statements in the recorded video either denying he entered the store, or asserting he merely entered the store, turned around immediately, and left.

Also, Petitioner cannot show he was prejudiced by the decision of counsel not to pursue further fingerprint testimony or the testimony of the cashiers. The admission of such testimony would not create a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The jury watched a video showing Petitioner wearing very distinctive clothing and accessories, standing in the office where the cigarettes were, and appearing to stuff them in his jacket. The video also showed Petitioner being arrested several hours later, wearing the same distinctive clothing and accessories. The jury learned that six of the ten stolen cigarette cartons – having been previously distinctively marked by the manager – were found in Petitioner's backpack. They also heard his various untrue statements about not being in the store. Thus, due to the weight of the evidence against him, Petitioner has not shown that the fingerprint or cashier testimony would probably result in a different outcome.

As for Petitioner's generalized claim that counsel failed to "adequately prepare any defense to the charged offenses," Petitioner fails to explain what such a defense would be or how it would probably lead to a different outcome. While he claims in his amended postconviction motion that "prior to trial, Defendant advised Counsel of a viable defense to the charged offenses and a reasonable explanation for possessing recently stolen property, specifically that he engaged in the buying and reselling of cigarettes," he does not explain how that would overcome the video evidence showing him stuffing the cigarettes into his jacket in the office where they

were stored. Additionally, although Petitioner did not testify, his statements to police that "everyone in here buys cigarettes and sells them back" were offered to the jury through the video and the testimony of Officer Daniel. ECF Doc. 10-2 at 150. Thus, the argument was put out there for the jury and did not alter the jury's determination of guilt.

For these reasons, Petitioner is not entitled to habeas relief on this claim.

### D.  Ground Four: IATC for Failing to File a Motion to Suppress Results of "Show Up" Identification

In Ground Four, Petitioner asserts that counsel rendered constitutionally ineffective assistance of counsel by failing to file a motion to suppress the results of a show-up identification, which Petitioner contends exceeded the scope of a lawful investigatory stop in violation of Defendant's Fourth and Fourteenth Amendment rights. Relying upon *Kollmer v. State*, 977 So. 2d 712 (Fla. 1st DCA 2008), Petitioner contends law enforcement extended the investigatory stop beyond the place of the initial encounter by handcuffing him, placing him in a police car, and transporting him away from the place where he was initially apprehended, so that an identification could be made.

Petitioner raised this claim in his postconviction motion, ECF Doc. 10-14 at 28, and on appeal, ECF Doc. 10-21 at 63. The circuit court, however, failed to specifically address this claim, and the First DCA rejected the claim without a written opinion, ECF Doc. 10-23. "Where a state court's decision is unaccompanied

by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Petitioner cannot meet that burden here, as any motion to suppress would have been denied and even if it had been granted, sufficient evidence remained that the suppression of the in-person identification would not have created a reasonable probability of a different outcome.

Prior to trial, Petitioner filed a *pro se* motion to suppress and the trial court held a hearing on July 30, 2018. ECF Doc. 10-3 at 153 (Transcript of hearing). Because Petitioner was represented by counsel, the court denied the motion with leave for counsel to file such a motion. *Id.* at 155-56. Counsel, however, did not do so because, as counsel explained, *Kollmer* was distinguishable and would not have supported a motion based on the facts of Petitioner's case. After hearing counsel's explanation, the circuit court considered the disagreement as a *Nelson* hearing and found there was no reasonable cause to believe counsel was rendering ineffective assistance of counsel. ECF Doc. 10-3 at 157-58. Additionally, the Petitioner brought the matter up to the court again prior to trial and the court discussed with counsel, once again, that there was no basis for the motion. ECF Doc. 10-2 at 174-76.

As counsel correctly concluded, *Kollmer* does not support a motion to suppress. In *Kollmer*, the police did not have probable cause to arrest and move the

Case No. 3:22cv1823-MCR-HTC

suspect because the description of the suspect was not as detailed as in Petitioner's case. Instead, in *Kollmer*, an unidentified young woman told officers "we had just [driven] past the person that they suspected that was breaking into the vehicles." The officer testified he saw a white male fleeing into a wooded area but could not describe the man's height, weight, hair color or clothing. Later, a police dog located a portable CD player and a black container on the path in the woods and tracked them to a yard where a man was found lying on his back. There were no other indicia that the man was associated with the car break-ins. The First DCA held that, "while we agree that the officers articulated a *reasonable suspicion* that appellant was involved in the burglaries, and were therefore authorized to conduct *an investigatory stop*, we hold that the officers exceeded the scope of a lawful investigatory stop in this case [because] [t]he State does not contend it had probable cause to arrest appellant at that time, nor does it suggest appellant consented to be transported." *Id.* at 715.

In contrast, here, police had probable cause to believe Petitioner had committed a crime. They were told that the manager had reviewed video of Petitioner wearing very distinctive clothing and accessories and then discovered Petitioner a few hours later wearing exactly that clothing and accessories. He was right across the street from the Circle K that he had burglarized and was found to possess the cartons of cigarettes reported stolen. He gave contradictory statements about whether he had even been in the store. These circumstances created probable

cause to suspect he had committed a crime, so he was properly detained and placed under arrest for the crimes he had committed. Therefore, trial counsel did not have a basis to file a motion to suppress and was not deficient in declining to pursue a meritless motion. Moreover, given the video evidence, it is simply improbable that suppression of the in-person identification evidence would have led to a favorable outcome for Petitioner.

For these reasons, Petitioner is not entitled to habeas relief on this claim.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 574.

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this Report and Recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Spellman*, 2018 CF 105, in the First Judicial District, in and for Escambia County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

3. That the clerk be directed to close the file.

Case No. 3:22cv1823-MCR-HTC

At Pensacola, Florida, this 28th day of February, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.